IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAVID ANTONIO LOPEZ-DIAZ,

    Petitioner,

       v.                           Civil Action No. 3:25cv1039

JEFF CRAWFORD, *et al.*,

    Respondents.

F I L E D
Mar. 5, 2026
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner David Antonio Lopez-Diaz's Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Amended Petition"). (ECF No. 8.) In the Amended Petition, Mr. Lopez-Diaz challenges his detention by Immigration and Customs Enforcement ("ICE"), arguing that ICE unlawfully arrested and detained him in violation of 8 U.S.C. § 1226(a), that ICE's failure to provide a bond hearing under 8 U.S.C. § 1226(a) violates his statutory right to such a hearing and his constitutional right to due process under the Fifth Amendment to the United States Constitution, and that the conditions of his detention violate his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. (ECF No. 8 ¶¶ 59–69.)

On January 23, 2026, the Court granted the Amended Petition in part and ordered Respondents to provide Mr. Lopez-Diaz with a bond hearing under 8 U.S.C. § 1226(a). (ECF No. 12.) The Court reserved ruling on Mr. Lopez-Diaz's claims regarding the legality of his arrest and the conditions of his confinement. (ECF No. 12, at 2.) "The Immigration Court held a bond hearing for [P]etitioner on January 27, 2026" and granted bond "in the amount of $20,000." (ECF No. 13, at 1.) On February 12, 2026, Mr. Lopez-Diaz posted bond and was released from

ICE custody. (ECF No. 16, at 1.)

The Court now enters this Memorandum Opinion articulating its reasons for its partial grant of the Amended Petition and addressing Mr. Lopez-Diaz's remaining claims.

## I. Factual and Procedural Background

### A.    Factual Background

Mr. Lopez-Diaz is a citizen of El Salvador. (ECF No. 8 ¶ 15.) He "arrived in the United States in 2007 and was not detained by immigration authorities." (ECF No. 8 ¶ 16.) He is married and has "one U.S. citizen child and three U.S. citizen step-children." (ECF No. 8 ¶ 15.)

On November 17, 2025, Mr. Lopez-Diaz was detained by ICE "in or around Richmond, Virginia" on his way to work. (ECF No. 8 ¶¶ 16, 37.) Petitioner was taken to the Norfolk, Virginia Enforcement and Removal Operations ("ERO") Office. (ECF No. 10-1 ¶ 7.) While at the processing facility, Mr. Lopez-Diaz was issued a "Form I-200, Warrant for Arrest of Alien." (ECF No. 10-1 ¶ 8; ECF No. 10-1, at 5.) The same day, Mr. Lopez-Diaz was served with a Notice to Appear ("NTA")[1] charging him with being "an alien present in the United States who has not been admitted or paroled." (ECF No. 8 ¶¶ 17, 29.) Mr. Lopez-Diaz was "placed in ICE custody at [the] Farmville Detention Center." (ECF No. 10-1 ¶ 8.)

Petitioner requested a bond hearing before an Immigration Judge, and the Immigration Court scheduled a hearing for December 10, 2025. (ECF No. 8 ¶¶ 18–20.) At the bond hearing, the Immigration Judge found that she lacked jurisdiction to consider Mr. Lopez-Diaz's request for bond under the Board of Immigration Appeals' ("BIA") decision in *Matter of Yajure*

---

[1] A Notice to Appear is a "'[c]harging document' that 'initiates a proceeding before an Immigration Judge.'" *Hasan v. Crawford*, 800 F. Supp. 3d 641, 648 n.3 (E.D. Va. 2025) (quoting 8 C.F.R. § 1003.13).

*Hurtado*,[2] 29 I&N Dec. 216 (BIA 2025). (*See* ECF No. 8 ¶¶ 19, 21.)

During his detention, Mr. Lopez-Diaz "contracted a viral, flu-like infection." (ECF No. 8 ¶ 48.) "Petitioner . . . made five separate requests for medical attention to Farmville Detention Center staff." (ECF No. 8 ¶ 48.) According to Petitioner, "[d]etention facility staff . . . claim[ed] the facility lack[ed] the resources to treat [him]," and "[a]ll of [his] requests [were] either . . . ignored or denied." (ECF No. 8 ¶ 49.) Petitioner also argued that the "expansion of immigration detentions over the past year . . . led to an influx of new detainees at the Farmville Detention Center," which created unsanitary and life-threatening conditions and further risked his safety. (ECF No. 8 ¶¶ 53–57.)

### B.   **Procedural Background**

On December 19, 2025, Mr. Lopez-Diaz filed a petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1.) The petition did not comply with Rule 2(c)(5) of the Rules Governing Section 2254 cases,[3] and the Court ordered Petitioner to file an amended petition in compliance with Rule 2(c)(5). (ECF No. 4.) On December 24, 2025, Mr. Lopez-Diaz filed an amended petition that still did not comply with Rule 2(c)(5). (ECF No. 6.) On January 5, 2026, the Court again ordered Petitioner to file an amended petition that complied with Rule 2(c)(5). (ECF No. 7.) On January 9, 2026, Mr. Lopez-Diaz filed the instant Amended Petition,

---

[2] On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado*. "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Soto v. Soto*, —F. Supp. 3d—, 2025 WL 2976572, at *1 (D.N.J. 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

[3] Rule 1(b) of the Rules Governing § 2254 Cases permits this Court to apply the Rules Governing § 2254 Cases to petitions under 28 U.S.C. § 2241. Rule 1(b), Rules Governing § 2254 Cases; *see Aguayo v. Harvey*, 476 F.3d 971, 976 (D.C. Cir. 2007).

which complies with Rule 2(c)(5). (ECF No. 8.)

On December 23, 2025, the Court ordered Respondents to file a notice indicating whether the factual and legal issues presented in the Amended Petition differ in any material fashion from those presented in *Duarte Escobar v. Perry, et al.*, —F. Supp. 3d—, 3:25-cv-758 (MHL), (E.D. Va. 2025). (ECF No. 4, at 2–3.) The Court further ordered that, if Respondents indicated that the factual and legal issues did not differ in any material fashion from those presented in *Duarte Escobar*, "each of the substantive filings in [*Duarte Escobar* would] be incorporated into this habeas proceeding, and this Court [would] issue a ruling without further filings from the parties." (ECF No. 4, at 3.)

The Court additionally ordered the parties to brief three new issues presented in the Amended Petition. (ECF No. 4, at 3.) First, the Court ordered the parties to discuss the effect on the Amended Petition of Mr. Lopez-Diaz's assertion that he is a member of the class certified by the United States District Court for the Central District of California in *Bautista v. Santacruz*, — F. Supp. 3d —, 2025 WL 3713987 (C.D. Cal. 2025), where, as discussed below, the court ordered three types of nationwide relief for noncitizens detained by ICE without a bond hearing.[4]

---

[4] A group of habeas petitioners filed the complaint in *Bautista*. The *Bautista* court issued four rulings relevant to the Amended Petition. On November 20, 2025, the *Bautista* court granted the petitioners' motion for partial summary judgment, declaring their detention unlawful. *Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025). On November 25, 2025, the *Bautista* court granted the petitioners' motion for class certification. *Bautista*, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). On December 18, 2025, the *Bautista* court granted in part and denied in part the petitioners' application for reconsideration and clarification of the court's earlier class certification ruling. *Bautista*, —F. Supp. 3d—, 2025 WL 3713982 (C.D. Cal. 2025). Also on December 18, 2025, the *Bautista* court entered its final judgment. *Bautista*, —F. Supp. 3d—, 2025 WL 3713987 (C.D. Cal. 2025).

In the Amended Petition, Petitioner cites to the first *Bautista* decision issued on November 20, 2025. (ECF No. 8 ¶ 19.) In his reply to Respondents' opposition to his Amended Petition, Mr. Lopez-Diaz relies on the fourth *Bautista* decision regarding final judgment. (ECF

Second, the Court ordered the parties to discuss Mr. Lopez-Diaz's allegation that he was arrested without a warrant,[5] rendering his arrest and continued detention unlawful.  Third, the Court ordered the parties to discuss Petitioner's assertion that the conditions of his confinement violated his right to be free from cruel and unusual punishment under the Eighth Amendment.

On January 16, 2026, Respondents filed an Opposition to the Amended Petition.  (ECF No. 10.)  In the Opposition, Respondents state "that the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in *Duarte Escobar*." (ECF No. 10, at 1.)  "[C]onsistent with [the Court's] recent order," Respondents contend that "this Court should incorporate the filings in *Duarte Escobar* into the record of this habeas action." (ECF No. 10, at 1.)  The Court therefore incorporates the parties' merits briefing in *Duarte Escobar* into the record. *See Duarte Escobar*, —F. Supp. 3d—, 3:25-cv-758, ECF Nos. 16, 18, 19, 20 (E.D. Va. 2025).  In their Opposition, Respondents further argued that the three new issues raised by Petitioner would not alter this Court's analysis of the Amended Petition. (*See* ECF No. 10, at 2–7.)  On January 23, 2026, Petitioner filed his reply. (ECF No. 11.)

---

No. 11, at 3–4.)  The Court relies on the *Bautista* court's fourth and final decision regarding final judgment in analyzing Mr. Lopez-Diaz's claims concerning the relief afforded by *Bautista*.

[5] In the Amended Petition, Mr. Lopez-Diaz argues that "immigration authorities did not obtain a warrant for Petitioner's continued detention after his unconstitutional arrest," and that the "failure to of authorities to secure an arrest warrant for [his] arrest and continued detention" violates the INA and is "therefore invalid." (ECF 8 ¶¶ 46–47.)

In response, Respondents explain through a sworn affidavit by Assistant Field Office Director Charles M. Byrne that "Petitioner [was issued] a Form I-200, Warrant for Arrest of Alien" while at the processing facility in Norfolk, Virginia on the day of his arrest. (ECF No. 10-1 ¶ 8.)  Respondents also provided a copy of the Warrant for Arrest of Alien. (ECF No. 10-1, at 5.)

Also on January 23, 2026, the Court granted in part Mr. Lopez-Diaz's Amended Petition and ordered Respondents to provide Mr. Lopez-Diaz with a bond hearing. (ECF No. 12.) The Court stated that it would explain its reasoning for granting Petitioner's bond hearing request in a forthcoming Memorandum Opinion. (ECF No. 12, at 1.) The Court also retained jurisdiction over the Amended Petition to consider Mr. Lopez-Diaz's claims regarding the legality of his arrest and the conditions of his confinement. (ECF No. 12, at 2.)

On January 30, 2026, both parties filed Notices informing the Court that the Immigration Court held a bond hearing for Petitioner on January 27, 2026, "at which time bond was granted in the amount of $20,000."[6] (ECF No. 13, at 1; ECF No. 14, at 1.) On February 12, 2026, Mr. Lopez-Diaz posted bond and was released from ICE custody. (ECF No. 16, at 1.)

## II. Standard of Review

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear

---

[6] In his Notice, Mr. Lopez-Diaz asserts that this bond amount is an "unconstitutional 'constructive denial' of the writ of habeas corpus" and an "attempt to circumvent this Court's mandate." (ECF No. 14, at 1.) He also argues the $20,00 bond amount is "objectively excessive and deviates sharply from legal and statistical norms"; that the hearing was conducted without "[f]oundational [e]vidence [r]equired by [l]aw" resulting a "perfunctory exercise rather than a meaningful adjudication"; and that "[s]etting a bond at a level the government knows a civil detainee cannot pay, while failing to provide the basic evidentiary records justifying that detention, is not 'due process.'" (ECF No. 14, at 2.) The Court will separately address whether the bond hearing Mr. Lopez-Diaz received violated his constitutional rights.

and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### III. Analysis

Mr. Lopez-Diaz's Amended Petition presents several issues, some well-known to the Court and others new:  first, whether Petitioner is entitled to a discretionary bond hearing under 8 U.S.C. § 1226(a)[7] or whether he is subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A);[8] second, whether he is lawfully detained under § 1226(a) because he was arrested by ICE officials without a warrant; and third, whether the conditions of his confinement render his detention unlawful under the Eighth Amendment.

On January 23, 2026, the Court granted in part Mr. Lopez-Diaz's Amended Petition and

---

[7] 8 U.S.C. § 1226 provides, in relevant part:

(a) Arrest, detention, and release

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

>> (1) may continue to detain the arrested alien; and

>> (2) may release the alien on—

>>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

>>> (B) conditional parole[.]

8 U.S.C. § 1226(a)(1)–(2).

[8] 8 U.S.C. § 1225 provides, in pertinent part:

> (b) Inspection of applicants for admission

>> (2) Inspection of other aliens

>>> (A) In general

ordered Respondents to provide Mr. Lopez-Diaz with a bond hearing.  (ECF No. 12.)  The Court

reserved ruling on Mr. Lopez-Diaz's remaining claims.  (ECF No. 12, at 2.)

     The Court now explains its reasons for ordering a bond hearing and addresses Petitioner's

remaining claims.

### A.    The Court Correctly Granted Mr. Lopez-Diaz's Amended Petition in Part and Ordered a Bond Hearing

     The Court's January 23, 2026 Order addressed whether, prior to his Court-ordered

January 27, 2026 bond hearing, Mr. Lopez-Diaz was entitled to a discretionary bond hearing

under 8 U.S.C. § 1226(a) or whether he was subject to the mandatory detention provision of 8

U.S.C. § 1225(b)(2)(A).  Petitioner contended that 8 U.S.C. § 1226 entitled him to a bond

hearing.  Specifically, Mr. Lopez-Diaz argued that (1) the discretionary detention provisions of

8 U.S.C. § 1226(a) entitled him to such a bond hearing, (ECF No. 8 ¶¶ 62–64), and (2) his Fifth

Amendment Due Process Rights bolstered his entitlement to such a hearing, (ECF No. 8 ¶¶ 65–

66).

     In opposition, Respondents relied on their arguments incorporated by this Court from

*Duarte Escobar v. Perry*, —F. Supp. 3d—, 2025 WL 3006742 (E.D. Va. 2025).[9]  Here, as in

---

                      Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

    [9] Respondents' arguments have also been raised and decided throughout the country.  The vast majority of the courts addressing this issue have concluded that 8 U.S.C. § 1226(a) pertains, meaning petitioners like Mr. Lopez-Diaz should receive a bond hearing.  *See Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *4–5 (E.D. Pa. Nov. 18, 2025) (noting that

*Duarte Escobar*, Respondents insisted (1) that the Court lacks jurisdiction over the Amended
Petition by virtue of two jurisdiction-stripping provisions of the Immigration and Nationality Act
("INA"), (*Duarte Escobar*, ECF No. 18, at 7–8); (2) that even if the Court had jurisdiction over
the Amended Petition, Mr. Lopez-Diaz's detention was lawful under 8 U.S.C. § 1225's
mandatory detention provisions, (*Duarte Escobar*, ECF No. 18, at 8–20); and (3) that Mr. Lopez-
Diaz's constitutional due process rights had not been violated, (*Duarte Escobar*, ECF No. 18, at
20–28).[10]

The parties' arguments as to these challenges are substantially similar to those made in
recent § 2241 habeas actions in the Eastern District of Virginia, including eight cases decided by

---

"of the 288 district court decisions to address the issue, 282 have determined that § 1226(a)
applies or likely applies in situations similar to those presented here").

In addition, dozens of courts in the Eastern District of Virginia (including this Court)
have rejected Respondents' position on eminently sound bases. *See Velasquez v. Noem*, No.
3:25-cv-998 (MHL), 2026 WL 279226, at *4 n.14 (E.D. Va. Feb. 3, 2026) (collecting thirty
cases rejecting Respondents' argument in this District alone).

A small minority of district courts have accepted Respondents' arguments. *See, e.g.*,
*Chavez v. Noem*, 801 F. Supp. 3d 1133, 1140–41 (S.D. Cal. 2025); *Vargas Lopez v. Trump*, — F.
Supp. 3d —, 2025 WL 2780351, at *7–10 (D. Neb. 2025). These decisions do not alter this
Court's determination.

Recently, the United States Court of Appeals for the Fifth Circuit joined those minority
courts. *See Buenrostro-Mendez v. Bondi*, — F.4th—, 2026 WL 323330 (5th Cir. 2026). The
Fifth Circuit's decision is not binding here. *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220,
260 (4th Cir. 2020). The Court is unpersuaded by the Fifth Circuit majority's reasoning for
many of the reasons cogently set forth in Judge Douglas's dissent, which explains that the
majority's interpretation risks rendering substantial portions of the statutory scheme superfluous
and internally inconsistent.

[10] Respondents do not argue that Mr. Lopez-Diaz has failed to exhaust his administrative
remedies, and they therefore waive any argument on that point. But even had Respondents
raised an exhaustion defense, they would not prevail because exhausting Mr. Lopez-Diaz's
administrative remedies prior to filing his Amended Petition would be futile. *See Duarte
Escobar*, 2025 WL 3006742, at *5.

this Court. *See Duarte Escobar*, 2025 WL 3006742; *Perez-Gomez v. Warden*, 3:25-cv-773

(MHL), 2025 WL 3141103 (E.D. Va. Nov. 10, 2025) (rejecting the same arguments made in

*Duarte Escobar*); *Contreras-Perez v. Noem*, No. 3:25-cv-882 (MHL), 2025 WL 3281774 (E.D.

Va. Nov. 25, 2025) (same); *Campos Flores v. Bondi*, No. 3:25-cv-797 (MHL), 2025 WL

3461551 (E.D. Va. Dec. 2, 2025) (same); *Velasquez v. Noem*, 3:26-cv-998 (MHL), 2026 WL

279226 (E.D. Va. Feb. 3, 2026) (same); *Espinoza Camacho v. Perry*, No. 3:26-cv-76 (MHL),

2026 WL 414937 (E.D. Va. Feb. 15, 2026) (same); *Sibran-Juares v. Washington Field Office

Director*, No. 3:26-cv-29 (MHL), 2026 WL 414938 (E.D. Va. Feb. 15, 2026) (same); *Avelar

Ramos v. Bondi*, No. 3:26-cv-112 (MHL), 2026 WL 614875 (E.D. Va. Mar. 4, 2026) (same).

On the issue of whether Petitioner is entitled to a bond hearing, Mr. Lopez-Diaz's

Amended Petition raised no new issues that would compel a different outcome. The Court

concluded that 8 U.S.C. § 1226(a) and the Fifth Amendment entitled Mr. Lopez-Diaz to a bond

hearing. Accordingly, on January 23, 2026, the Court appropriately granted the Amended

Petition. (ECF No. 12.)

### 1.    The Court Has Jurisdiction Over the Amended Petition

As a threshold matter, this Court has jurisdiction to consider Mr. Lopez-Diaz's Amended

Petition. Respondents argue that the Court lacks subject matter jurisdiction over the Amended

Petition because two provisions of the INA strip the Court of jurisdiction over the Amended

Petition: 8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(g). (*Duarte Escobar*, ECF No. 18, at 7–8.)

As this Court held in *Duarte Escobar*, neither 8 U.S.C. §§ 1252(b)(9)[11] nor 1252(g)[12]

---

[11] For instance, 8 U.S.C. § 1252(b)(9) does not divest this Court of its habeas jurisdiction because Mr. Loepz-Diaz does not seek review of a removal order. *Duarte Escobar*, 2025 WL 3006742, at *6–7 (citing *Jennings v. Rodriguez*, 583 U.S. 294–95 (2018) (plurality opinion)).

divests this Court of jurisdiction under 28 U.S.C. § 2241 to review Mr. Lopez-Diaz's Amended Petition. *Duarte Escobar*, 2025 WL 3006742, at *6–8; *see also Luna Quispe*, 2025 WL 2783799, at *2–3. The Court has jurisdiction to consider the merits of the Amended Petition and proceeds to the substance of Mr. Lopez-Diaz's claim.[13]

> **2.    The Court Appropriately Ordered that the Immigration Court Conduct a Bond Hearing for Mr. Lopez-Diaz Because He Was Entitled to a Bond Hearing Pursuant to 8 U.S.C. § 1226**

With respect to the substance of Petitioner's claim, Mr. Lopez-Diaz argues that his detention prior to the January 27, 2026 hearing was governed by the discretionary detention provisions of § 1226 rather than the mandatory detention provisions in § 1225(b)(2). (ECF No. 8 ¶¶ 62–64.)

According to Respondents, Mr. Lopez-Diaz's detention prior to the January 27, 2026 bond hearing was lawful under the INA because Mr. Lopez-Diaz was not legally granted entry into the country and was therefore an "applicant for admission," meaning § 1225(b)(2) governs his detention. (*Duarte Escobar*, ECF No. 18, at 8–20.) For the reasons in *Duarte Escobar*, as well as the dozens of other decisions issued by courts in this District on the same issue, this Court concluded that Petitioner's detention is governed by 8 U.S.C. § 1226(a)'s discretionary

---

[12] 8 U.S.C. § 1252(g) likewise does not divest the Court of its habeas jurisdiction because this case does not involve commencement, adjudication, or execution of any immigration order. *Duarte Escobar*, 2025 WL 3006742, at *7–8 ("[Section] 1252(g) does not apply 'to *all* claims arising from deportation proceedings.'" (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis added))).

[13] This Court also recently considered whether *Bautisa*'s class certification would strip this Court of jurisdiction to consider a § 2241 petition where the petitioner may qualify as a class member. *See Velasquez*, 2026 WL 279226, at *5. The Court found that it did not. *Id.* ("The Court concludes only that *Bautista* does not deprive the Court of its jurisdiction to adjudicate the merits of [p]etitioner's individualized claim for habeas relief. As [p]etitioner correctly argues, [petitioner's] association with the [*Bautista* class] '[does] not extinguish [his] individual[] right to pursue habeas relief' in this Court.").

framework, not § 1225(b)'s mandatory detention procedures. *Duarte Escobar*, 2025 WL 3006742, at *8–13. This argument fails.

Mr. Lopez-Diaz has been present in the United States since 2007. (ECF No. 8 ¶ 15.) He is thus not an "applicant for admission" subject to the mandatory detention provisions of § 1225 but rather falls within the discretionary detention provisions of § 1226(a) governing aliens who are already in the country. *See Jennings v. Rodriguez*, 583 U.S. 281, 288–90, 303 (2018) (finding that § 1226(a) is the "default rule" governing "aliens already in the country" whereas § 1225 governs "aliens seeking admission into the country").[14] As explained in *Duarte Escobar*, the plain text of the INA,[15] Supreme Court precedent, district court decisions nationally, and

---

[14] The Court observes that, for decades, "Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 n.6 (BIA 2025). But on July 8, 2025, "Acting Director of U.S. Immigration and Customs Enforcement, Todd M. Lyons, issued an internal memorandum explaining that the agency had 'revisited its legal position'" by determining that "[the mandatory detention provisions of section 1225] of the Immigration and Nationality Act (INA), rather than [the discretionary detention provisions of section 1226], is the applicable immigration detention authority for all applicants for admission." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 217–18 (D. Mass 2025). The July memorandum characterized, seemingly for the first time, all noncitizens who entered the United States without inspection as doing so "seeking admission," no matter how much time passed between their entrance into the United States and their apprehension by law enforcement.

On September 5, 2025, the Board of Immigration Appeals ("BIA") released its precedential decision in *Matter of Yajure Hurtado* in line with Acting Director Lyons' memorandum. *Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *1 (D.N.J. Oct. 22, 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

The Court owes the BIA no deference in its interpretation of the INA and interprets §§ 1225 and 1226 *de novo*. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395–96 (2024). Indeed, the *Bautista* court persuasively found that *Matter of Yajure Hurtado* cannot be *controlling* law because it relies on the same faulty statutory analysis rejected in *Bautista*. *Bautista*, 2025 WL 3713987, at *12; *see also Duarte Escobar*, 2025 WL 3006742, at *12. The same is true here.

[15] As this Court explained in *Duarte Escobar*, § 1225 requires that an applicant be "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2). The statute's use of active

decades of practice fully support this conclusion. *Duarte Escobar*, 2025 WL 3006742, at *8–13. Petitioner was entitled to a bond hearing under § 1226(a) and its implementing regulations. The Court appropriately ordered the Immigration Court to provide Mr. Lopez-Diaz with the January 27, 2026 bond hearing.

### 3. The Court Correctly Ordered that the Immigration Court Conduct a Bond Hearing for Mr. Lopez-Diaz Because His Fifth Amendment Due Process Rights Were Violated

Petitioner also argues that prior to the January 27, 2026 bond hearing, his detention without a bond hearing violated his due process rights under the Fifth Amendment's Due Process Clause.[16] (ECF No. 11 ¶¶ 16–23, 49–52.) Respondents contend that prior to his latest bond hearing, Petitioner's due process rights were governed only by the INA, rather than the Fifth Amendment's Due Process Clause, and that even if Petitioner were subject to the Fifth Amendment's Due Process protections, denying him a bond hearing did not violate his constitutional rights. (*Duarte Escobar*, ECF No. 18, at 20–28.)

For the reasons articulated in *Duarte Escobar*, the Court rightly determined that Mr. Lopez-Diaz's due process rights were governed by the Fifth Amendment and that his continued detention under 8 U.S.C. § 1225 without a bond hearing violated his due process rights. *Duarte Escobar*, 2025 WL 3006742, at *14–16. Specifically, the Court found that all three *Mathews*

---

language suggests that an alien must be taking *active* steps towards "seeking admission" to the United States. Presence in the country is not enough. *Duarte Escobar*, 2025 WL 3006742, at *9. To find otherwise, as Respondents (again) ask this Court to do, would render other provisions of the INA superfluous. *Id.* at *9–10.

[16] The Fifth Amendment to the United States Constitution provides, in pertinent part:

No person shall . . . be deprived of life, liberty or property without due process of law.

U.S. Const. amend. V.

factors weighed in Mr. Lopez-Diaz's favor: (1) he had a strong private interest in remaining free from physical detention; (2) there was a significant risk of erroneous deprivation of his due process rights because he was entitled to a bond hearing under § 1226(a) that he has not received; and, (3) Respondents failed to demonstrate a compelling government interest in detaining Petitioner without a bond hearing. *Duarte Escobar*, 2025 WL 3006742, at *14–16 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). The Court therefore properly ordered the Immigration Court to provide Petitioner with another bond hearing in order to vindicate his Fifth Amendment rights.

### 4.     The Court's Decision to Order a Bond Hearing is Consistent with the Decision in *Bautista v. Santacruz*

On December 18, 2025, the *Bautista* court entered a final judgment, certifying a nationwide class of noncitizens who, having been detained by ICE, were deprived of a bond hearing despite their entitlement to such a hearing under § 1226. *See Bautista*, 2025 WL 3713987, at *32. In entering its final judgment, the *Bautista* court granted three forms of class-wide relief: (1) habeas relief for the detainees *named in the complaint*; (2) a nationwide declaratory judgment that the Department of Homeland Security's ("DHS") internal policy regarding mandatory detention is unlawful; and, (3) nationwide vacatur of the same DHS internal policy under the Administrative Procedure Act ("APA"). *Bautista*, 2025 WL 3713987, at *12–16, *21, *28–32.

Mr. Lopez-Diaz contended that he is a member of the class certified in *Bautista*,[17] (ECF No. 8 ¶ 19; ECF No. 11, at 5), and that the *Bautista* court's vacatur of the DHS policy entitles

---

[17] *Bautista* certified a "Bond Eligible Class," which it defined to include:

All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be

noncitizens detained under § 1226(a) to bond hearings. (ECF No. 11, at 4–5.) He thus argued

that his status as a member of the *Bautista* class further entitled him to a bond hearing. (ECF No.

11, at 4–5.)

      Even if Petitioner is a member of the *Bautista* class, the Court was free to grant Mr.

Lopez-Diaz partial, individualized habeas relief with respect to his request for a bond hearing.

Accordingly, this Court takes no position on whether Mr. Lopez-Diaz is properly considered a

member of a *Bautista* class nor whether Mr. Lopez-Diaz is entitled to a bond hearing as a

consequence of his inclusion in that class. Thus, the Court granted Mr. Lopez-Diaz a bond

hearing pursuant to his individualized claim for habeas relief. *Velasquez*, 2026 WL 279226, at

\*5; *Bautista Villanueva v. Bondi*, No. 25-cv-4152, 2026 WL 100595, at \*2 (D. Md. Jan. 14,

2026) ("[R]egardless of [the petitioner's] membership in the . . . *Bautista* class, and regardless of

the entry of the declaratory judgment in that case, [the petitioner] has shown that she is not

subject to mandatory detention under § 1225."); *see Boluito Lopez v. Guadian*, No. 1:26-cv-153

(MSN), ECF No. 5 (E.D. Va. Jan. 26, 2026) (granting petitioner's § 2241 on the basis on

individualized habeas relief despite petitioner's claim that he was a member of *Bautista* class).

---

      apprehended upon arrival; and (3) are not or will not be subject to detention under
8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of
Homeland Security makes an initial custody determination.

*Bautista*, 2025 WL 3713987, at \*32.

5.    **The Court Correctly Found that Mr. Lopez-Diaz Was Entitled to a Bond Hearing**

Under § 1226(a) and its implementing regulations, the Court appropriately determined that Petitioner was entitled to a bond hearing before an immigration judge.  8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1).[18]  Mr. Lopez-Diaz received that bond hearing on January 27, 2026.

B.    **The Court Denies as Moot Mr. Lopez-Diaz's Claims Challenging the Legality of His Arrest and the Conditions of His Confinement**

In its Order granting the Amended Petition in part and ordering a bond hearing, the Court withheld ruling on Petitioner's remaining claims regarding:  (1) the legality of his warrantless arrest under the INA and the impact, if any, of that arrest on his current confinement, and (2) the constitutionality of the conditions of his confinement.  For the reasons articulated below, these claims are now moot.

"'A habeas corpus petition is moot when it no longer presents a case or controversy under Article III, § 2, of the Constitution.'" *Mbonu v. Crawford*, No. 3:17-cv-702 (HEH), 2018 WL 3016287, at *1 (E.D. Va. June 15, 2018) (quoting *Aragon v. Shanks*, 144 F.3d 690, 691 (10th Cir. 1998)).  "No case or controversy exists unless the petitioner has suffered an actual injury

---

[18] 8 C.F.R. § 1236.1(d)(1) provides, in relevant part:

After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority [under § 1226] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter.

8 C.F.R. § 1236.1(d)(1).

that can 'be redressed by a favorable judicial decision.'" *Id.* (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).

Mr. Lopez-Diaz was released from ICE custody on February 12, 2026 after he posted bond. (ECF No. 16, at 1.)  And where, as here, a petitioner seeks release from ICE custody, "the petitioner's deportation or release from custody moots the petition." *Castillo-Fornaris v. Crawford*, No. 3:19-cv-862 (DJN), 2020 WL 4227701, at *2 (E.D. Va. July 23, 2020) (internal citation omitted); *Roberts v. Lynch*, 3:16-cv-179 (RCY), 2016 WL 6662741, at *1 (E.D. Va. Sept. 27, 2016), *report and recommendation adopted*, 2016 WL 6662701 (E.D. Va. Nov. 10, 2016) (denying as moot ICE detainee's § 2241 petition where the detainee was released from custody "pursuant to an order of supervision").  Because Mr. Lopez-Diaz has already been released from ICE custody, his claims challenging the legality of his detention based on his unlawful warrantless arrest and the conditions of his confinement are  moot.  The Court will deny these claims without prejudice.[19]

### IV.  Conclusion

For the reasons articulated above, the Court granted Mr. Lopez-Diaz's request for a bond hearing.  He received that bond hearing on January 27, 2026 and was released from ICE custody on February 12, 2026.

---

[19] On February 13, 2026, the Court ordered additional briefing on the adequacy of Petitioner's bond hearing. (ECF No. 15.)  In ruling that Mr. Lopez-Diaz's claims regarding his warrantless arrest and the conditions of his confinement are moot, the Court makes no finding with respect to whether his claims about the sufficiency of the bond hearing are likewise moot.

17

Because Mr. Lopez-Diaz was released from custody, his claims challenging the legality of his arrest and the conditions of his confinement are moot.

An appropriate Order shall issue.

Date: 3/5/26

Richmond, Virginia

_____ /s/ _____

M. Hannah Lauck
Chief United States District Judge